# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| **KIMBERLY J. BUCHANAN,**<br><br>    **Plaintiff,**<br><br>  **vs.**<br><br>**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**<br><br>    **Defendant.** | **CV 12-149-BLG-CSO**<br><br><u>**ORDER ON SUMMARY JUDGMENT MOTIONS**</u> |

Plaintiff Kimberly J. Buchanan ("Buchanan") seeks judicial review of Defendant Acting Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). After the parties consented in writing, Chief Judge Cebull assigned this case to the undersigned for all proceedings. *ECF 24.*

Now pending are the parties' cross-motions for summary judgment. *ECFs 25* (Buchanan's motion) and *30* (Commissioner's motion). For the reasons stated below, the Court denies Buchanan's motion, grants the Commissioner's motion, and affirms the ALJ's decision denying benefits.

## I.   **PROCEDURAL BACKGROUND**

Buchanan filed her benefits applications in January 2010 alleging that she has been unable to work since April 18, 2009. *Tr. 154-67.* The Social Security Administration ("SSA") denied Buchanan's applications initially and upon reconsideration. *Tr. 112-19.* On April 27, 2011, an Administrative Law Judge ("ALJ") held a hearing. *Tr. 43-105.* On August 24, 2011, the ALJ issued a written decision denying Buchanan's claims. *Tr. 33-42.* On September 28, 2012, after the Appeals Council denied Buchanan's request for review, the ALJ's decision became final for purposes of judicial review. *Tr. 5-9*; 20 C.F.R. §§ 404.981, 416.1481 (2012). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.   **STANDARD OF REVIEW**

This Court's review is limited. The Court may set aside the

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, considering both evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

III.  **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-

Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.  THE ALJ's OPINION

The ALJ followed the five-step sequential evaluation process in considering Buchanan's claims. First, the ALJ found that Buchanan had not engaged in substantial gainful activity since her alleged onset date of April 18, 2009. *Tr. 35.*

Second, the ALJ found that Buchanan has the following severe impairments: "ulnar nerve entrapment and knee problems[.]" *Id.* He also found Buchanan has the following non-severe impairments: anxiety, depression, "hyperlipidemia, polymenorrhea, vertigo, insomnia, cardiac dysrhytmia, cubital tunnel syndrome, and carpal tunnel syndrome[.]" *Tr. 36, 38.*

Third, the ALJ found that Buchanan does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. *Tr. 37.*

Fourth, the ALJ found that Buchanan has the following residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can stand or walk for up to one hour at a time for up to two of eight hours. Additionally, the claimant can sit for six to seven of eight hours. Moreover, the claimant can never crawl or climb ladders or scaffolds and can no more than occasionally perform all other postural activities. Furthermore, the claimant can frequently, but not repeatedly, use her upper extremities. In addition, the claimant must avoid concentrated exposure to vibrations and extreme temperatures. Lastly, the claimant cannot perform jobs requiring constant focus throughout an eight-hour day.

*Tr. 37.*

The ALJ found that Buchanan is able to perform her past relevant work as a retail sales person. *Tr. 40.* The ALJ reached this conclusion finding that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.*

Fifth, although the ALJ found that Buchanan had the ability to perform her past relevant work as a retail sales person, he also found that "there are other jobs existing in the national economy that she is also able to perform." *Tr. 41.* Thus, the ALJ made "alternative

findings for step five of the sequential evaluation process[ ]" and determined, after hearing testimony from a vocational expert and concluding that Buchanan acquired work skills from past relevant work that are transferable to other occupations, that Buchanan also could perform work as: "[s]cheduler maintenance[,]" "[l]aundry clerk[,]" and "[i]nvoice control clerk[.]"  *Tr. 42.*

The ALJ concluded that, "although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate[.]" *Id.*

## V. <u>PARTIES' ARGUMENTS</u>

Buchanan argues that the ALJ erred in three principal ways: (1) by failing to give proper reasons for rejecting the opinions of examining and non-examining physicians respecting whether she can engage in repetitive motion of her right hand, *Buchanan's Mem. in Support of Summary Judgment Mtn. (ECF 27) at 6-9*; (2) by improperly rejecting her treating physician's opinion, *id. at 9-12*; and (3) by failing to give clear and convincing reasons for rejecting her testimony, *id. at 12-18*.

In response, the Commissioner argues that the ALJ properly: (1) considered medical opinions of record, *Comm.'s Br. (ECF 32) at 2-10*; (2) evaluated Buchanan's credibility, *id. at 10-15*; and (3) based his findings that Buchanan could perform her past relevant work and other work existing in significant numbers in the national economy on substantial evidence in the record, *id. at 15-16.*

In reply, Buchanan argues that: (1) the ALJ should have afforded the opinion of Buchanan's treating physician, Dr. Michael Geurin, M.D., controlling weight, *Buchanan's Reply Br. (ECF 33) at 3-6*; (2) the ALJ failed to articulate clear and convincing reasons for rejecting Buchanan's testimony, *id. at 6-9*; (3) the vocational expert did not respond to a hypothetical question that properly incorporated all of Buchanan's limitations, *id. at 10*; (4) the Court should exercise its discretion in awarding benefits, *id. at 10-11.*

## VI. <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error. Thus, the Court will affirm the ALJ's decision.

### A.   **ALJ's Consideration of Evidence**

In evaluating Buchanan's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *Tr. 33-42.*  He reviewed, as discussed further below, his rationale for rejecting certain evidence in his assessment of Buchanan's medical records, credibility, and RFC. *Tr. 37-40.*  He also set forth the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect

to Buchanan's claims.  *Id.*  For these reasons, and for those reasons discussed below, the Court finds unpersuasive Buchanan's argument that the ALJ failed to base his decision on substantial evidence.

**B.     ALJ's Assessment of Examining and Non-Examining Physicians' Opinions**

Buchanan argues that the ALJ improperly assessed the opinions of: (1) Dr. Richard Hurd, M.D. ("Dr. Hurd"), a consultative physician who examined Buchanan; and (2) Dr. Robert Mitgang, M.D. ("Dr. Mitgang"), a state agency physician who did not examine Buchanan. *ECF 27 at 6-9.*

Buchanan argues that the ALJ erred in affording weight to Dr. Hurd's opinion that Buchanan had the ability to work in a sedentary capacity with some limitation in repetitive motion of her right upper extremity.  Buchanan argues that the ALJ failed to mention Dr. Hurd's additional opinions that Buchanan could "work for 6 hours out of 8 and [that she has a] limitation against repetitive motion with the right upper extremity."  *Id. at 7.*  The Court is not persuaded by Buchanan's allegation of error.

First, the ALJ did expressly find that Buchanan had some

limitation of repetitive motion of her right upper extremity. In stating his finding respecting Buchanan's residual functional capacity, the ALJ wrote, in relevant part: "Furthermore, the claimant can frequently, but not repeatedly, use her upper extremities." *Tr. 37.* Buchanan's argument that the ALJ did not mention this limitation is simply incorrect.

Second, Buchanan is correct that the ALJ did not expressly mention Dr. Hurd's statement that Buchanan could work 6 hours out of 8. But that statement, taken in context with Dr. Hurd's entire report, cannot reasonably be characterized as an absolute prohibition on work exceeding six hours. Dr. Hurd's concluding statement respecting Buchanan's functional capacity reads, in total, as follows:

> Based upon the claimant's history, the physical exam, and also my careful observation of Ms. Buchanan, it is my professional opinion that Ms. Buchanan is capable of work-related activities and, as she heals from her carpal tunnel surgery on her right wrist, she will gradually be able to advance in the amount of work that she can do. I feel that, at this time, she is fully capable of working 6 hours out of an 8 hour day in a 40 hour week, at least in the sedentary category work with some limitation regarding repetitive motion of the right upper extremity.

*Tr. 285.*

Dr. Hurd's opinion is less clear-cut than Buchanan would have the Court conclude. Dr. Hurd's two diagnoses were: (1) "Tendonitis right wrist status post carpal tunnel release," and (2) "Nicotine dependence." *Id.* He expressly noted that Buchanan "is capable of work-related activities" and "will gradually be able to advance in the amount of work that she can do." *Id.* He also noted that she is "fully capable" of working 6 of 8 hours in a 40 hour week performing work that is "at least in the sedentary category[.]" *Id.* Taken in context with his entire report, Dr. Hurd's opinion cannot reasonably be construed as absolutely limiting Buchanan to no more than 6 hours of work per day.

Even if the absence of that portion of Dr. Hurd's opinion from the ALJ's decision constitutes error, the Court concludes that it is harmless. The Ninth Circuit has applied the "harmless error" standard in social security cases. In *Carmickle v. Commissioner*, the court summarized the evolving harmless-error standards as follows:

> [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error ... it is whether the ALJ's decision remains legally valid, despite such error. In *Batson*, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's

decision, and therefore was harmless, because the ALJ's remaining reasoning *and ultimate credibility determination* were adequately supported by substantial evidence in the record. 359 F.3d at 1197. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. *Id*. Likewise, in *Stout*, after surveying our precedent applying harmless error in social security cases, we concluded that "in each case, the ALJ's error ... was inconsequential to the *ultimate nondisability determination*." 454 F.3d at 1055 (emphasis added).

Our specific holding in *Stout* does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide any reasons for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported. Here, however, as in *Batson*, the ALJ considered Carmickle's testimony and provided specific reasons for finding him less than fully credible. Thus, there is a basis for the court to review the ALJ's decision, and the analysis set forth in *Batson*, rather than *Stout*, controls. And as just discussed, in *Batson* we focused on the validity of the ALJ's underlying decision, and not necessarily on whether the ALJ would come out differently if the case were remanded after error was identified by the court.

*Carmickle v. Commissioner*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)

(footnotes and some internal citations omitted) (*citing Stout v.*

*Commissioner, Social Security Administration*, 454 F.3d 1050, 1055 (9th

Cir. 2006); *Batson v. Commissioner*, 359 F.3d 1190, 1197 (9th Cir.

2004)).

Under either of the standards discussed in *Carmickle,* the Court here concludes that any error the ALJ committed in failing to mention the subject portion of Dr. Hurd's opinion was harmless. The Court has reviewed the entire record and concludes that a reasonable ALJ would not have reached a different disability determination had that portion of Dr. Hurd's opinion been included and any error in omitting it was inconsequential to the ultimate nondisability determination.

Turning next to Dr. Mitgang's opinion, the Court finds Buchanan's argument unpersuasive. Dr. Mitgang did not suggest the degree of restriction of Buchanan's functional capacity as Buchanan urges. Rather, Dr. Mitgang stated that Buchanan could handle/finger with her upper extremities frequently (*Tr. 331, 333*), but should limit repetitive motion of her right upper extremity (*Tr. 333*). This opinion is consistent with that portion of the ALJ's RFC determination in which he found that Buchanan "can frequently, but not repeatedly, use her upper extremities." *Tr. 37.* The ALJ did not err.

### B.     ALJ's Assessment of Dr. Geurin's Opinion

As noted, Buchanan argues that the ALJ erred in improperly

rejecting the opinion of her treating physician, Dr. Michael D. Geurin, M.D. ("Dr. Geurin"). *ECF 27 at 9-12.* For the reasons that follow, the Court concludes the ALJ did not err.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

Having reviewed the record and the parties' arguments, the Court concludes, for the following reasons, that the ALJ did not err in considering Dr. Geurin's opinion. First, the ALJ expressly acknowledged that Buchanan had limitations, consistent with Dr.

Geurin's opinion, respecting the degree Buchanan could use her upper extremities. *Tr. 37.* The ALJ rejected Dr. Geurin's opinion, however, to the extent he opined that Buchanan's impairments or treatment would cause her to be absent from work, on average, about four days per month. *Tr. 40.* The Court concludes that the ALJ offered adequate reasons, in accordance with the foregoing standard, for doing so.

First, the ALJ rejected the subject portion of Dr. Geurin's opinion because it was not supported by specific medical findings. *Id.* As such, that portion of his opinion was speculative. An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Commissioner of Social Security*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas*, 278 F.3d at 957).

Second, the ALJ noted that Dr. Geurin is not a specialist. *Tr. 40.* While this fact alone is not determinative of the weight that the ALJ could have afforded Dr. Geurin's opinion, it is true that more weight generally is given to the opinion of a specialist about issues within that specialist's area of expertise than to the opinion of a source who is not a

specialist.  20 C.F.R. §§ 1527(c)(5) and 416.927(c)(5) (2012).  That Dr. Geurin is not a specialist is certainly a factor that the ALJ properly considered in affording no weight to the subject portion of Dr. Geurin's opinion.

Third, the ALJ rejected the subject portion of Dr. Geurin's opinion because it was "neither supported by nor consistent with the evidence." *Tr. 40.*  In doing so, the ALJ considered the medical evidence of record in detail.  The ALJ noted, for example, that Dr. Hurd opined, from a June 2010 evaluation, that Buchanan had "no limitations for standing or sitting," was "capable of climbing up and down the stairs," had no difficulty squatting, had normal fine and gross finger motion, and had normal wrists, with limitations regarding repetitive motion of her upper extremities.  *Tr. 39.*  From this sample of the medical evidence of record, and for the other reasons stated above, the Court concludes that the ALJ did not err in rejecting that portion of Dr. Geurin's opinion that Buchanan would be absent, on average, four days per month because of her impairments and treatment.

The Court also notes that, in his written opinion, the ALJ

repeatedly acknowledged Buchanan's impairments and, in particular, her functional limitations stemming from the problems she has had with her upper extremities. *Tr. 37, 40*. In doing so, the ALJ considered and acknowledged the medical evidence of record that demonstrates these impairments. *Tr. 39-40*. But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted). The ALJ did not err in concluding that the records do not indicate a sustained severe loss of function that necessarily would render Buchanan incapable of engaging in any substantial gainful activity.

## C.   ALJ's Assessment of Buchanan's Credibility

Buchanan argues that the ALJ failed to provide "clear and convincing reasons for rejecting [her] testimony and statements[.]" *ECF 27 at 12*. The Court is not persuaded.

In *Molina v. Astrue*, the Ninth Circuit recently restated the long-standing standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.  At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).  In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation.  For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms.  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged.  *Tr. 38.*  Also, the ALJ did not find that Buchanan

was malingering. Thus, to find that Buchanan was not entirely credible, the ALJ had to give specific, clear, and convincing reasons. The Court concludes that he did.

First, the ALJ observed that evidence of record, including Buchanan's own testimony, indicated that her functional limitations may not be as severe as she alleged. For example, the ALJ noted that Buchanan: (1) was "running a land skidster," similar to a Bobcat, only five months after her alleged onset of disability date (*citing Tr. 247*); (2) "testified that she can write documents, do graphic design, manipulate photographs, and use excel, email, and the internet[,]" (*Tr. 56*); (3) attended college and carried a 4.0 grade point average in business school (*citing Tr. 276*); and (4) was taking an online course to obtain a license to be an insurance agent. *Tr. 38*.

Second, the ALJ noted that the medical evidence also did not seamlessly support Buchanan's position with respect to the severity of her limitations. The ALJ recounted medical evidence that Buchanan is not a candidate for knee surgery and does not require an assistive device for ambulation. *Id.* An ALJ may take the lack of objective

medical evidence into consideration when assessing credibility.  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ also noted that at Buchanan's consultative examination, she was able to perform the physical exam maneuvers with "very little difficulty" using, on "several instances" her "right upper extremity equally well as the left upper extremity[,]" including:

> gesturing while describing making toy planes, putting her ponytail through the hole in her baseball cap, pulling her pant leg for measurement, and opening "two relatively heavy doors with her right upper extremity," all of which [Buchanan] did "without any obvious discomfort[.]"

*Tr. 38-39.*

The ALJ further noted that the consultative examiner observed that "there was some inconsistency of the actual function of her right upper extremity ... compared to the times when I was actually examining her wrists[.]" *Tr. 39 (citing Tr. 283).*  The ALJ wrote that the consultative examiner also noted that Buchanan's "knees were stable" and she could hop with both feet off of the ground and admitted that she could walk for at least an hour.  *Id.*

Buchanan takes issue with these findings. She argues that: (1) her use of the skidster was "ill-advised" and occurred before both her carpel tunnel release surgery and Dr. Geurin's pain management therapy, *ECF 27 at 14-15*; (2) taking an online course to become a licensed insurance agent is not inconsistent with her alleged limitations, *id. at 15*; (3) not being a candidate for knee surgery and not needing an assistive device to ambulate fail to address "the real issue in the case, i.e. the ability to engage in the manipulative requirements of work activity[,]" *id.*; and (4) her performance on the physical exam maneuvers at her consultative examination actually "led [the examiner] to limit [her] to sedentary work with a prohibition against repetitive motion of the right hand[,]" *id.*

The Court concludes that the ALJ did not err. In reaching his conclusion respecting Buchanan's credibility, the ALJ employed ordinary credibility evaluation techniques, as he was permitted to do. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (setting forth what an ALJ may consider in determining a claimant's credibility); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Buchanan is simply

urging the Court to reweigh the evidence, and to arrive at a conclusion different from that of the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

In sum, the Court concludes that the ALJ gave specific, clear, and convincing reasons for finding that Buchanan was not credible to the extent she alleges inability to perform all work activity. Thus, the ALJ did not err.

### D. ALJ's Hypothetical Questions to Vocational Expert

Buchanan raised, for the first time in her reply brief, her contention that the vocational expert did not render an opinion in response to a hypothetical question that properly incorporated all of Buchanan's limitations. *ECF 33 at 10.* This argument lacks merit.

As an initial matter, generally "[c]ourts decline to consider arguments that are raised for the first time in reply." *Stewart v. Wachowski*, 2004 WL 2980783 (C.D. Cal. 2004) (citing *Halliburton EnergyServices, Inc. v. Weatherford International, Inc.*, 2003 WL 22017187, * 1, n.1 (N.D. Tex. Aug. 26, 2003) ("Halliburton offers additional grounds for reconsideration in its reply [;] however, the

grounds are not proper under Rule 59(e), ... and the Court will not consider an argument raised for the first time in a reply brief"); *Dietrich v. Trek Bicycle Corp.*, 297 F.Supp.2d 1122, 1128 (W.D. Wis.2003) ( "Defendant raised this argument for the first time in its reply brief. Because this argument should have been raised earlier or not at all, I will not consider it"); *Public Citizen Health Research Group v. National Institutes of Health*, 209 F.Supp.2d 37, 44 (D. D.C. 2002) ("The Court highly disfavors parties creating new arguments at the reply stage that were not fully briefed during the litigation.... By placing a new argument in the Reply, Plaintiff does not permit Defendant or Intervenor–Defendant to competently respond to such an argument"); *Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 119 F.Supp.2d 1083, 1103, n.15 (C.D. Cal. 2000) ("Although the defendants raised a laches defense in their opposition to the plaintiffs' motion for summary judgment, the first time they raised a statute of limitations defense was in their reply brief. The Court need not, and does not, consider arguments raised for the first time in a reply brief"); *see also Montana Fair Hous., Inc. v. City of Bozeman*, 854 F. Supp. 2d 832, 846

(D. Mont. 2012) ("Because Bozeman has not had an opportunity to respond [to] this specific argument, raised for the first time on reply, the Court declines to address it here.").

Although the Court is not obligated to address Buchanan's argument, it nevertheless concludes that it lacks merit. As discussed above, the Court has already determined that the ALJ based his decision on substantial evidence in the record. And it has concluded that the ALJ did not err either in his assessment of the opinions of Buchanan's treating, examining, and non-examining physicians or in his assessment of Buchanan's credibility regarding her symptoms and limitations. Thus, the ALJ was not required to include in his hypothetical question to the VE Buchanan's symptoms and limitations not supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Buchanan's limitations. The Court concludes he did so, and thus he did not err.

## VII. <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that Buchanan's summary judgment motion (*ECF 25*) is DENIED, the Commissioner's summary judgment motion (*ECF 30*) is GRANTED, and the Commissioner's decision denying DIB and SSI is AFFIRMED.

The Clerk of Court shall enter Judgment accordingly.

DATED this 9th day of July, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge